## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 20-CIV-60819-RAR

**SEAN LYEW**,

      Petitioner,

v.

**RICKY D. DIXON**, **SECRETARY,**
**FLORIDA DEPARTMENT OF**
**CORRECTIONS**,

      Respondent.[1]

_____/

### <u>ORDER DENYING HABEAS CORPUS PETITION</u>

**THIS CAUSE** is before the Court upon a *pro se* Petition for Writ of Habeas Corpus in which Petitioner, Sean Lyew, challenges his convictions and sentences entered in the state circuit court in and for Broward County, Florida. *See* Petition [ECF No. 1] ("Pet."). Respondent filed its "Response to Order to Show Cause" [ECF No. 8] ("Response"), and Petitioner did not file a Reply. *See generally* Docket.

Having carefully reviewed the record and governing law, and for the reasons set forth below, Ground Six of the Petition is **DENIED** on the merits, Ground Five of the Petition is **DISMISSED** as non-cognizable and **DENIED** to the extent it could be reconstrued, and all other claims are **DISMISSED** as untimely.

---

[1] The original Respondent in this case, Mark S. Inch, retired from his position as Secretary of the Florida Department of Corrections on November 19, 2021. Former Secretary Inch's successor, Ricky D. Dixon, has been automatically substituted as the Respondent. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party."). The Clerk's Office is **INSTRUCTED** to make that modification on the docket.

## TIMELINESS

To summarize what the Court finds below, Grounds One through Four are untimely.  The timeliness of Grounds Five and Six, however, is a more complicated issue.  Ultimately, however, the Court treats these claims as timely filed.

### A.  Grounds One through Four

In Grounds One through Four, Petitioner appears to raise claims of ineffective assistance of counsel.  For instance, in Ground One, Petitioner claims his counsel was ineffective "for not properly objecting to the erroneous jury instructio[n]" on felony murder.  Pet. at 14–17.  Ground Two is a claim contending Petitioner's trial counsel was ineffective for failing to object to the Assistant State Attorney's "references to the Petitioner, having committed the crime of 'Escaping'" even though Petitioner was never charged with "escape" under Florida law.  *Id.* at 18–19.  Next, in Ground Three, Petitioner argues that trial counsel was ineffective for "failing to preserve the issue about [an] inflammatory statement," which a witness made at trial and that was highly prejudicial.  *Id.* at 22–23.  Finally, in Ground Four, Petitioner appears to allege that his counsel was ineffective for failing to object to the Assistant State Attorney characterizing trial counsel's cross-examination as "attacking" the witnesses.  *Id.* at 24.

### i.  Timeliness under § 2244(d)(1)(A)–(D)

Here, Petitioner concedes that Grounds One through Four are all untimely.  *See* Pet. at 13.  And the Court has assured itself that these claims are, indeed, untimely.

Stated broadly, "a person in custody pursuant to the judgment of a State court" has a one-year period to file a habeas corpus petition.  *See* 28 U.S.C. § 2244(d)(1).  That limitation period "runs from the latest of" the following dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)–(D).   Of course, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending" is not "counted toward any period of limitation under this subsection." § 2244(d)(2). To be "properly filed," as that term is used, a postconviction motion's "delivery and acceptance [must be] in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000).

To illustrate, a judgment becomes final under § 2254(d)(1)(A) when "[the Supreme Court] affirms a conviction on the merits on direct review or denies a petition for writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v. United States*, 537 U.S. 522, 527 (2003).  As the Eleventh Circuit has explained, "the time for pursuing review in the Supreme Court of the United States is governed by Supreme Court Rules 13.1 and 13.3, which together provide that a petition for a writ of certiorari to review a judgment . . . entered by a state court of last resort . . . is timely when it is filed . . . within 90 days after entry of the judgment . . . and not from the issuance date of the mandate." *Moore v. Sec'y, Fla. Dep't of Corr.*, 762 F. App'x 610, 617–18 (11th Cir. 2019) (cleaned up).  Stated plainly, for petitioners who do not seek discretionary review from the Florida Supreme Court, the judgment becomes final 90 days after the District Court of Appeal enters a judgment affirming the conviction and sentence.  *See Chavers v. Sec'y, Fla. Dep't of Corr.*, 468 F.3d 1273, 1275–76 (11th Cir. 2006).

Following a jury trial, the trial court entered its judgment and sentence in Petitioner's case. *See* Judgment [ECF No. 9-1] at 75–87. Although Petitioner appealed, *see* Notice of Appeal [ECF No. 9-1] at 88, the Florida Fourth District Court of Appeal ("Fourth DCA") summarily affirmed the judgment without a written explanation for its affirmance on October 13, 2010. *See Lyew v. State*, 46 So. 3d 574 (Fla. 4th DCA 2010). Petitioner did not pursue further review in the Florida Supreme Court or in the Supreme Court of the United States. *See generally* Docket for Case No. 4D07-3981 [ECF No. 9-1] at 90–92. Thus, the judgment became final for § 2244(d)(1)(A) purposes on the last day Petitioner could have filed a petition for writ of certiorari—that is, January 11, 2011—because it marks 90 days from when the Fourth DCA affirmed the judgment. *See Chavers*, 468 F.3d at 1275–76.

As such, without tolling, Petitioner had until January 11, 2012 to file his habeas petition. *See Downs v. McNeil*, 520 F.3d 1311, 1318 (11th Cir. 2008) ("[T]his Court has suggested that the limitations period should be calculated according to the 'anniversary method,' under which the limitations period expires on the anniversary of the date it began to run."). Since he did not, *see generally* Pet., he must rely on statutory tolling to be timely under § 2244(d)(1)(A). Petitioner tolled some—but not enough—of the limitations period. The Court need not consider all of the intervals of time during which there were no tolling motions. This is because two intervals of untolled time definitively establish the untimeliness of this action.

The first interval of time concerns the time that elapsed after the date of finality. Petitioner first filed a Motion to Correct Sentence on December 13, 2011.[2] *See* Motion to Correct Sentence

---

[2] "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009). "Absent evidence to the contrary, [courts] assume that a prisoner delivered a filing to prison authorities on the date that he signed it." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014).

[ECF No. 9-1] at 166–67. Assuming that motion qualifies as a tolling motion under § 2244(d)(2),[3] it means 336 days elapsed without tolling because that is how much time ticked from the date of finality (*i.e.*, January 11, 2011) to the Motion to Correct Sentence's filing (*i.e.*, December 13, 2011).

The second interval of time concerns the time that elapsed immediately before Petitioner filed his Petition in this Court. The Fourth DCA's Mandate in Case No. 4D18-2018, which pertained to an appeal of a postconviction motion's denial, issued on December 20, 2019. *See* Mandate for Case No. 4D18-2018 [ECF No. 9-1] at 464. Petitioner had no other filings pending in State court as of that date. Thus, the limitations period ran untolled when the Fourth DCA issued its Mandate. *See Nyland v. Moore*, 216 F.3d 1264, 1267 (11th Cir. 2000) ("Nyland's motions were pending until the mandates issued and, presuming Nyland's second motion for state post-conviction relief was properly filed, his instant § 2254 petition was timely filed."). It appears Petitioner filed his Petition on March 30, 2020.[4] *See generally* Pet. This means an additional 102 days elapsed without tolling because there were no pending motions as of the Fourth DCA's Mandate (*i.e.*, December 20, 2019) to the date he filed his Petition (*i.e.*, March 30, 2020).

---

[3] Respondent says this motion did not toll the limitations period, *see* Resp. at 14, but it makes no difference to the outcome. So, for purposes of efficiency, the Court assumes that it tolls the limitations period.

[4] It "appears" Petitioner filed his Petition on this date because of the small discrepancies in the Petition. Based on his certificate of service, Petitioner filed his Petition "[o]n 3 day Of 31 To Clerk Of Court[.]" Pet. at 41 (errors in original). That certificate of service has no written year and, of course, mistakenly suggests that there is a 31st month in a year. But a liberal construction of his Petition suggests that Petitioner filed it on March 31. On another page, to be sure, Petitioner "declare[d] under penalty of perjury" that he executed his Petition on "3-30-20." Pet. at 40. Conflicting with that averment, an institutional stamp indicates Petitioner handed his Petition to prison officials on March 31, 2020. Pet. at 1. All this to say, the Court has given Petitioner the benefit of the doubt and finds he filed his Petition on March 30, 2020 because the one-day difference does not impact the timeliness of Grounds One through Four.

In sum, the number of untolled days during those two intervals of time (*i.e.*, 336 + 102) exceeds the one-year limitations period permitted under § 2244(d)(1)(A) because it totals 438 days of untolled time.

Grounds One through Four also fail to qualify in terms of timeliness under one of the other provisions contained in § 2244(d)(1).   And Petitioner makes no effort to argue to the contrary. Instead, he asserts that he can circumvent the timeliness bar in one of two ways: (1) the Supreme Court's holding in *Martinez v. Ryan*, 566 U.S. 1 (2012) applies to the instant Petition and (2) he has established his "actual innocence" to overcome untimeliness.   Pet. at 13.   Both contentions are meritless.

### ii.  *Martinez v. Ryan is Inapplicable to Timeliness*

Petitioner's reliance on *Martinez v. Ryan* is misplaced.   "[T]he *Martinez* rule explicitly relates to excusing a procedural default of ineffective-trial-counsel claims and *does not apply to AEDPA's statute of limitations or the tolling of that period*."  *Arthur v. Thomas*, 739 F.3d 611, 630 (11th Cir. 2014) (emphasis added).

### iii.  *Actual Innocence*

Moving on to his claim of actual innocence, it is true that "a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief."  *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013).   This exception, however, "applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted the petitioner.'"  *Id.* at 395 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).   And, therefore, "AEDPA's time limitations apply to the typical case in which no allegation of actual innocence is made."  *Id.* at 394.

For a claim of actual innocence "[t]o be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence— that was not presented at trial." *Schlup*, 513 U.S. at 324. Of course, "such evidence is obviously unavailable in the vast majority of cases, [meaning] claims of actual innocence are rarely successful." *Id.*

Petitioner, as previously stated, invokes "actual innocence" as an exception to AEDPA's time limitations, but he does not clarify the factual basis for his alleged entitlement to that exception. Pet. at 13. Conclusory allegations of innocence are insufficient to undermine confidence in the outcome of a criminal proceeding and cannot meet the actual innocence exception. *See Fast v. Sec'y, Fla. Dep't of Corr.*, 826 F. App'x 764, 766 (11th Cir. 2020) ("[E]ven construing Fast's arguments liberally, his unsupported, conclusory statements failed to present the type of rare and exceptional circumstances that warrant equitable tolling or to demonstrate actual innocence that would overcome the timeliness bar.").

The Court acknowledges, however, that Petitioner mentions the existence of an allegedly exculpatory affidavit from a former State witness, Justin Wilson, in Grounds Five and Six. *See* Pet. at 26–27, 30–31. Liberally construing his Petition, the Court will address whether that affidavit could theoretically assist Petitioner in making a credible showing of actual innocence. *See Holsomback v. White*, 133 F.3d 1382, 1386 (11th Cir. 1998) ("[G]iven the liberal construction to which *pro se* pleadings are entitled, Holsomback's pleadings can fairly be read to assert a broader claim.").

Justin Wilson is one of several codefendants who the State charged with Petitioner for participating in a string of robberies in Broward County, Florida. *See* Information [ECF No. 9-1] at 11–14. Mr. Wilson, unlike his codefendants, was not charged with felony murder because he

was not in the getaway vehicle that hit a pedestrian while trying to flee law enforcement.  *See* Hearing Transcript [ECF No. 10-3] at 48–49.  Mr. Wilson testified at trial that he, Petitioner, and the other two codefendants participated in several robberies before Petitioner and the other codefendants drove off in his mother's car.  Trial Transcript [ECF No. 10-1] at 946–56.  In his affidavit, Mr. Wilson said Petitioner was not with him or any of the other codefendants on the day of the incident and that the lead prosecutor effectively coerced him into making those statements at trial by promising a probation-only sentence to testify against Petitioner.  Affidavit of Justin Wilson [ECF No. 9-1] at 268–69 ("Wilson's Aff.").

A witness who recants his or her trial testimony after the fact does not automatically establish actual innocence.  *See Mize v. Hall*, 532 F.3d 1184, 1198 n.12 (11th Cir. 2008) ("[T]he Doster affidavit recanting her trial testimony does not make [the petitioner's] actual innocence claim any stronger.").  Even if the Court assumes that Mr. Wilson's affidavit is true, which is a big concession since it completely contradicts Mr. Wilson's trial testimony, its contents do not overcome the other evidence at trial solidifying Petitioner's involvement in the robberies and subsequent felony murder.  Multiple witnesses identified Petitioner as one of the four robbers.  *See* Trial Transcript [ECF No. 10-1] at 716–17, 891–92, 1015–17.  One law enforcement officer, in addition, testified that they saw Petitioner get out of the vehicle that hit the victim.  *Id.* at 588–91, 598.

In short, Mr. Wilson's post hoc averment to being coerced into lying at trial holds little weight against the other evidence establishing Petitioner's involvement in the crimes.  *See Johnson v. Warden, Ga. Diagnostic & Classification Prison*, 805 F.3d 1317, 1325 (11th Cir. 2015) ("[Petitioner's] 'newly discovered evidence' is patently insufficient in light of the wealth of evidence proving guilt.").

Mr. Wilson, in any event, is not a reliable affiant. After all, (1) he is a long-time friend of Petitioner, (2) he has already served his sentence in this case, and (3) he refused to attend the evidentiary hearing before the state postconviction court to recant his testimony under oath. Hearing Transcript [ECF No. 10-3] at 8–9, 30–31, 81–82; *see also Mize*, 532 F.3d at 1198 n.12 ("Doster is biased. She is Mize's former girlfriend and testified at trial that she wrote letters to Mize while in jail telling him that he was the 'sweetest' man she ever met. Because she was released from jail without charge, she faces no downside for recanting her trial testimony in order to help her former boyfriend."). At the very best, Petitioner has shown that some jurors *might* have acquitted him. But that, of course, is not enough. *See Schlup*, 513 U.S. at 327 (requiring that no reasonable juror would have acquitted the petitioner). Petitioner, therefore, is not entitled to the actual innocence exception.

### iv.  *Equitable Tolling*

The limitation period may also be equitably tolled. To warrant equitable tolling, Petitioner "must show (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (cleaned up); *see also Holland v. Florida*, 560 U.S. 631, 649 (2010) (same). "The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." *Holland*, 560 U.S. at 653 (cleaned up). The petitioner bears the burden of establishing the applicability of equitable tolling by making specific allegations. *See Cole v. Warden, Ga. State Prison*, 768 F.3d 1150, 1158 (11th Cir. 2014) (citing *Hutchinson v. Fla.*, 677 F. 3d 1097, 1099 (11th Cir. 2012)).

Petitioner never relies or even alludes to this doctrine. *See generally* Pet. And, even if he had, the Court sees nothing in the record suggesting Petitioner was unable to file a timely Petition

in this Court.  This equitable exception, therefore, also does not apply to him.  Grounds One through Four are untimely and, therefore, **DISMISSED**.

### B. *Ground Five*

Respondent has conditionally waived its limitations defense on Ground Five.  *See* Response at 16 ("Based on these assumptions the newly discovered evidence claim [in Ground Five] would be timely.").  Some context is needed to understand this conditional waiver.

At times, claims in a habeas petition may be subject to different limitation periods under AEDPA.  *See Zack v. Tucker*, 704 F.3d 917, 926 (11th Cir. 2013) ("[W]e hold that the statute of limitations in AEDPA applies on a claim-by-claim basis in a multiple trigger date case.").[5]  This is such a case.  In Ground Five, Petitioner challenges the state postconviction court's findings following an evidentiary hearing on a state postconviction motion.  More specifically, he believes "the postconviction court did not adequately address his *Giglio* claim."  Pet. at 29.  Respondent, though, says this claim is timely under § 2244(d)(1)(D) *only if* the Court finds the "earliest time for discovering [Mr. Wilson's affidavit to be] July 8, 2015."  Response at 16.  Otherwise, as the Respondent maintains, this action is untimely.  *Id.* at 18.

On March 2, 2016, Petitioner filed his Second Rule 3.850 Motion for Postconviction Relief ("Second 3.850 Motion").  *See* Second 3.850 Motion [ECF No. 9-1] at 257–65.  This Second 3.850 Motion alleged Justin Wilson's affidavit—the affidavit referenced earlier—served as newly discovered evidence authorizing him to file an otherwise untimely and successive postconviction motion under Florida law.  *Id.*; *see also* Fla. R. Crim. P. 3.850(b)(1) ("No other motion shall be filed or considered pursuant to this rule if filed more than [two] years after the judgment and sentence become final unless it alleges that . . . the claim is made within [two] years of the time

---

[5]  The Court shall elaborate on this concept later in this Order.

the new facts were or could have been discovered with the exercise of due diligence."). The Second 3.850 Motion alleged that Mr. Wilson's affidavit was executed on July 8, 2015. Second 3.850 Motion at 257. The state postconviction court held an evidentiary hearing on the Second 3.850 Motion on May 31, 2018, but it ultimately denied the Second 3.850 Motion on the merits in a June 6, 2018 order. Order Denying the Second 3.850 Motion [ECF No. 9-1] at 374–77. Petitioner appealed the denial of the Second 3.850 Motion, but the Fourth DCA summarily affirmed. *See Lyew v. State*, 284 So. 3d 1047 (Fla. 4th DCA 2019). The Fourth DCA's mandate issued on December 20, 2019. Mandate for Case No. 4D18-2018 [ECF No. 9-1] at 464.

Respondent's arguments for why the Court should find Ground Five untimely make little sense. First, Respondent says Ground Five is distinguishable from the newly discovered evidence claim Petitioner raised in his Second 3.850 Motion and, for that reason, Petitioner's latest iteration of his newly discovered evidence claim should be treated as untimely. *See* Resp. at 15–16. The factual predicate of Ground Five is based on the same newly discovered evidence—*i.e.*, Mr. Wilson's affidavit—at issue in Petitioner's Second 3.850 Motion. This first argument, therefore, is misplaced because it distorts the factual record and misreads Petitioner's allegations.

Second, Respondent disputes whether Petitioner exercised "due diligence" in obtaining Mr. Wilson's affidavit since "Justin Wilson was a close friend of Petitioner." Response at 16. Counsel for Respondent overlooks (or omits) that its stance on "due diligence" is at odds with the State's concession during postconviction proceedings. *See* Response to Second 3.850 Motion [ECF No. 9-1] at 278–79 (conceding Petitioner "me[t] his burden of showing the evidence was unknown to the parties and/or their attorneys at the time of trial *and* could not have been ascertained by the

exercise of due diligence" as the reason for why "an evidentiary hearing is needed to permit the defendant an opportunity to prove his claim").[6]

Even if the Court were to further probe at the timeliness of this claim and allow the State to disavow its previous concession, the Court would still conclude this claim is timely. For timeliness under § 2244(d)(1)(D), "the only relevant inquiry is whether petitioner could have discovered the evidence at an earlier date." *Frederick v. Sec'y, Fla. Dep't of Corr.*, 481 F. App'x 472, 474 (11th Cir. 2012). "Petitioner is presumed to have conducted a reasonable investigation of all facts surrounding his prosecution." *Id.* (cleaned up). In evaluating a petitioner's due diligence, the Court "does not require a prisoner to undertake repeated exercises in futility or to exhaust every imaginable option, but rather to make *reasonable efforts*." *Id.* (cleaned up and emphasis added).

Ms. Cynthia Kauff, Petitioner's mother, attested to meeting with Mr. Wilson at a Father's Day event in 2015 after Mr. Wilson sent a friend request to her on Facebook. *See* Affidavit of Cynthia Kauff [ECF No. 9-1] at 274 ("Kauff's Aff."); *see also* Second 3.850 Motion at 260. At this event, Mr. Wilson reportedly apologized for lying at Petitioner's trial and told Ms. Kauff that he decided on recanting his testimony. *See* Kauff's Aff. Father's Day in 2015 was on June 21, 2015.[7] Mr. Wilson executed his affidavit on July 8, 2015—three weeks later. *See* Wilson's Aff. Respondent contends Petitioner could have discovered Mr. Wilson's desire to recant his testimony sooner because Petitioner and Respondent were "close."

---

[6]  Respondent's argument is, in addition, contrary to Florida law. *See Davis v. State*, 26 So. 3d 519, 528 (Fla. 2009) ("[R]ecanted testimony cannot be 'discovered' until the witness *chooses* to recant.") (emphasis in original).

[7]  *See generally* Fed. R. Evid. 201(b)(1).

The Court disagrees.  This is because, even if Petitioner maintained a close friendship with Mr. Wilson during and after trial, Petitioner could not have discovered Mr. Wilson's recanted testimony until Mr. Wilson was ready to recant.  After all, had Petitioner alleged that Mr. Wilson testified falsely without Mr. Wilson's willingness to say so in an affidavit or on the stand, such a claim likely would have been futile.  More importantly, if the Court assumed Petitioner could have discovered Mr. Wilson's willingness to recant sooner than Father's Day of 2015, such an inference would indulge pure conjecture, contravene the presumption that Petitioner "conducted a reasonable investigation," and hold Petitioner to a standard that he should have "exhaust[ed] every imaginable option" until Mr. Wilson acquiesced to a complete recantation.  *See Frederick*, 481 F. App'x at 474 (cleaned up).  This the Court will not do.

The state postconviction court also utilized the Father's Day date to establish the starting point for Petitioner's newly discovered evidence claim since it adopted the *State's Response* that Petitioner could not have learned about the recantation until *after* Mr. Wilson spoke to Petitioner's mother at the Father's Day event.  Order Granting Evidentiary Hearing for Second 3.850 Motion [ECF No. 9-1] at 281; *see also* Response to Second 3.850 Motion [ECF No. 9-1] at 278 ("It was at this [Father's Day] lunch that Wilson allegedly revealed to [Petitioner's mother] that he had lied when he testified against her son and was recanting his testimony.").

It would be improper for this Court—on federal habeas review—to second-guess the postconviction court's finding as to when Petitioner could have discovered this information.  After all, the Court must presume that finding was correct.  *See* 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct.").  Respondent provides no explanation for why the Court should ignore the postconviction court's finding.  All this to say, § 2244(d)(1)(D) applies to this claim.

The earliest Petitioner could have discovered Mr. Wilson's willingness to recant was, as the Court just stated, Father's Day of 2015—June 21, 2015. Petitioner's incarcerated status and the fact that Mr. Wilson confessed to Petitioner's mother, of course, pushes back the date Petitioner could have discovered that willingness. Even so, the Court will assume the earlier date of June 21, 2015, because Ground Five would be timely even with that unfavorable assumption.

Petitioner filed his Second Rule 3.850 Motion on March 2, 2016. That motion tolled the limitations period. *See Brown v. Sec'y for Dep't of Corr.*, 530 F.3d 1335, 1338 (11th Cir. 2008) ("[A] properly filed Rule 3.850 motion seeking to set aside a conviction would undoubtedly toll AEDPA's limitations period during its pendency."). This means 255 days elapsed without tolling from Father's Day of 2015—*i.e.*, the triggering date[8]—to the filing of the Second Rule 3.850 Motion. As stated previously, 102 days of untolled time elapsed from the Fourth DCA's Mandate—*i.e.*, the last date on which tolling motions were pending in State court—to the date Petitioner filed his Petition with this Court. In sum, even with that unfavorable construction of the record, only 357 days of untolled time elapsed. Ground Five is, therefore, timely under § 2244(d)(1)(D).

### C. *Ground Six*

The timeliness of Ground Six is equally complicated. In Ground Six, Petitioner says the state postconviction court "abused [its] discretion" by applying the wrong standard of law in evaluating his claim under *Giglio v. United States*, 405 U.S. 150 (1972). *See* Pet. at 30–39. To establish a *Giglio* error a petitioner must show that "(1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) such use was material—*i.e.*, that there is 'any reasonable likelihood' that the false testimony 'could . . . have

---

[8] Father's Day of every year lands on a Sunday. But we include the Sunday triggering date for calculation purposes because, again, it makes no difference.

affected the judgment.'"   *Davis v. Terry*, 465 F.3d 1249, 1253 (11th Cir. 2006) (quoting *Giglio*, 405 U.S. at 154) (alterations in original).  Petitioner argues that the state postconviction court never made a finding as to whether Mr. Wilson's testimony at trial was false or whether the prosecutor knew that Mr. Wilson's testimony was false, thereby rendering the denial of his *Giglio* claim unreasonable.  Pet. at 31.  Liberally construing his allegations together with the record, it appears Petitioner could not have brought this claim until Mr. Wilson was willing to recant.  *See* Pet. at 31–32, 36.

Without question, Ground Six—like Ground Five—implicates § 2244(d)(1)(D).  Under that provision, as stated earlier, the limitations period on a claim runs from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."   § 2244(d)(1)(D).  Respondent insists Ground Six is not timely because "Petitioner cannot reopen time-barred claims by including them with an allegation of newly discovered evidence."  Response at 17.  In support, Respondent relies on *Zack v. Tucker*, 704 F.3d 917 (11th Cir. 2013).  *See id.*

Respondent's argument, however, misreads *Zack*'s holding.  In *Zack*, the Eleventh Circuit held "the statute of limitations in AEDPA applies on a claim-by-claim basis in a multiple trigger date case."  *Zack*, 704 F.3d at 926.  A multiple trigger date case—as the term suggests—is a case where a prisoner's limitations period under AEDPA does *not* begin exclusively under one of the provisions of § 2244(d)(1)(A)–(D).  *See id.*  For instance, in *Zack*, the prisoner had two sets of claims.  The first set were claims that ran pursuant to § 2244(d)(1)(A)—*i.e.*, from when the judgment became final—and the second pertained to claims that ran pursuant to § 2244(d)(1)(C)—*i.e.*, from when a new constitutional right, that was retroactively applicable on collateral review, was recognized by the Supreme Court of the United States.  For the petitioner in *Zack*, the multiple trigger date status became applicable only because some of the petitioner's claims arose under

*Atkins v. Virginia*, 536 U.S. 304 (2002), which held intellectually disabled defendants were constitutionally ineligible for the death penalty.  The other claims raised by the petitioner in *Zack* did not arise under *Atkins*.  *See id.* at 926.  Thus, the Eleventh Circuit's decision in *Zack* reached a reasonable and straightforward conclusion: the non-*Atkins* claims were untimely under § 2244(d)(1)(A) and the *Atkins* claims were timely under § 2244(d)(1)(D).

In so holding, the Eleventh Circuit explained that the petitioner in *Zack* could not resurrect his untimely claims—those that did not arise under *Atkins*—simply because he presented an *Atkins* claim.  *See Zack*, 704 F.3d at 926 ("We see no reason why a habeas petitioner who allows his judgment to become final should be permitted, by the happenstance of an intervening decision or the discovery of new evidence, to reopen claims that he could have raised earlier but did not.").  Here, since the factual predicate for Ground Six rests on Mr. Wilson's affidavit, and Ground Five is timely only because it, too, relies on Mr. Wilson's affidavit, Ground Six is timely.  In its argument to the contrary, Respondent—as the Court sees it—either (1) overlooks that Grounds Five and Six rely on the same factual predicate and thereby misunderstands § 2244(d)(1)(D)'s applicability to Ground Six or (2) misinterprets *Zack*'s holding.  For this reason, the Court rejects Respondent's argument and treats Ground Six as timely.

## ANALYSIS

### A.  Governing Law

"As amended by [the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")], 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  Some of the more restrictive limits are found in § 2254(d).  Under that provision, a federal court may grant habeas relief from a state court judgment only if the state court's decision on the merits was (1) contrary to, or an unreasonable application of, clearly established federal law as

determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Consequently, § 2254(d) constructs a "highly deferential standard for evaluating state-court rulings" because, after all, this standard "demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

"A state court's decision is 'contrary to' federal law if the 'state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Consalvo v. Sec'y, Fla. Dep't of Corr.*, 664 F.3d 842, 844 (11th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)) (brackets omitted). A state court's decision qualifies as an "an unreasonable application of federal law if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Consalvo*, 664 F.3d at 844 (quoting *Williams*, 529 U.S. at 413) (cleaned up). "'If this standard [seems] difficult to meet'—and it is—'that is because it was meant to be.'" *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

By its own plain terms, § 2254(d)'s deferential standard applies only when a claim "was adjudicated on the merits in State court proceedings[.]" *See also Cullen*, 563 U.S. at 181 ("If an application includes a claim that has been adjudicated on the merits in State court proceedings, § 2254(d), an additional restriction applies."); *Cone v. Bell*, 556 U.S. 449, 472 (2009) ("Because the Tennessee courts did not reach the merits of Cone's *Brady* claim, federal habeas review is not subject to the deferential standard that applies under AEDPA."). The summary denial of a claim with no articulated reasons presumptively serves as an adjudication on the merits subjecting the claim to § 2254(d)'s additional restrictions. *See Richter*, 562 U.S. at 100 ("This Court now holds

and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").  This is because federal courts ordinarily presume that § 2254(d)'s deferential standard applies when a constitutional claim has been presented to a state court and denied in that forum.  *See, e.g.*, *id.* at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

At the same time, "federal court[s] should 'look through' [an] unexplained decision to the last related state-court decision that *does* provide a relevant rationale" if one exists.  *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (emphasis added).  From there, federal courts "presume that the unexplained decision adopted the same reasoning." *Id.* "[T]he State may rebut [that] presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." *Id.*

### B. Ground Five

As a reminder, in Ground Five, Petitioner claims that the state postconviction court erred in denying his Second 3.850 Motion because the state court lacked "competent substantial evidence" to do so. *See* Pet. at 28–29.  Respondent argues Ground Five should be dismissed for failing to raise a cognizable § 2254 claim.  Resp. at 27, 43.  The Court agrees.

A § 2254 petition is limited in scope, as "a district shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court *only* on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.  § 2244(a) (emphasis added); *see also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (same).  Ground Five of the Petition does not allege a violation of federal law; in fact, Petitioner's

argument rests on Florida evidentiary principles to claim that the state postconviction court lacked competent substantial evidence to deny his Second 3.850 Motion.  *See* Pet. at 25–30.

Petitioner bears the burden of presenting facts to support a federal claim.  *See Borden v. Allen*, 646 F.3d 785, 810 (11th Cir. 2011) (describing the "heightened pleading requirement" applicable on collateral review).  Because Petitioner describes evidentiary errors during state collateral proceedings, and nothing more, Ground Five is not cognizable.  *See Carroll v. Sec'y, Fla. Dep't of Corr.*, 574 F.3d 1354, 1365–66 (11th Cir. 2009) ("[A]n alleged defect in a collateral proceeding does not state a basis for habeas relief . . . . [W]e conclude [Carroll's] due process claim regarding the failure of the state court to conduct an evidentiary hearing does not state a cognizable claim for habeas relief.") (cleaned up); *Holsey v. Thompson*, 462 F. App'x 915, 917 (11th Cir. 2012) (holding "a state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief" and that "a challenge to a state collateral proceeding . . . does not undermine the legality of the conviction itself and, thus, alleged defects in such proceedings do not provide a basis for habeas relief.") (cleaned up).

Indeed, "[i]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  *Landers v. Warden, Att'y Gen. of Ala.*, 776 F.3d 1288, 1296 (11th Cir. 2015) (cleaned up).  If the postconviction court failed to adhere to state procedural rules, that is for Florida's appellate courts to resolve—"unless the fact-finding procedure itself violated *federal* law."  *Id.* (emphasis added).  And, despite Petitioner's *pro se* status, the Court has no authority to rewrite the Petition so as to convert Petitioner's state law claim into a federal one. *See, e.g.*, *Shuler v. Ingram & Assocs.*, 441 F. App'x 712, 716 n.3 (11th Cir. 2011).  As such, since Ground Five fails to allege a violation of *federal* law, it is **DISMISSED** as non-cognizable.

Further, even if the Court reconstrued this as a *Giglio* claim, and not as a challenge to state law evidentiary rules, Petitioner's claim fares no better.  This is because Petitioner's isolated

invocation of *Giglio*, *see* Pet. at 29, fails to advance any facts—much less specific facts—for why the postconviction court erred in its review of his *Giglio* claim. *See Borden*, 646 F.3d at 810. True, Petitioner insists the postconviction court failed to adhere to state law evidentiary principles as the basis for why his *Giglio* claim was erroneously denied. *See* Pet. at 29 ("It was error for the lower court to simply choose to disregard the defendant's testimony."). But he never advances allegations linking how the failure to adhere to state law evidentiary principles resulted in his inability to satisfy *Giglio*. Nor has he identified what factual findings were erroneously found within this claim or whether those errors are unconstitutional under federal law.

As pled, Petitioner cannot meet his burden even under *de novo* review, so he certainly cannot meet his burden under § 2254(d) if it were to apply. *See Trepal v. Sec'y, Fla. Dep't of Corr.*, 684 F.3d 1088, 1109–10 (11th Cir. 2012). For this reason, Ground Five is also **DENIED** on the merits.

### C. Ground Six

Petitioner's final claim is that the state postconviction court "abused [its] discretion" by applying the wrong standard of law in evaluating the *Giglio* claim made in his Second 3.850 Motion. *See* Pet. at 30–39. To establish a *Giglio* error, a petitioner must show that "(1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) such use was material—i.e., that there is 'any reasonable likelihood' that the false testimony 'could . . . have affected the judgment.'" *Davis v. Terry*, 465 F.3d 1249, 1253 (11th Cir. 2006) (quoting *Giglio*, 405 U.S. at 154) (alterations in original).

Here, Petitioner maintains that the state postconviction court never made a finding as to (1) whether Justin Wilson's testimony at trial was false or (2) whether the prosecutor knew that Mr. Wilson's testimony was false. Pet. at 31. Thus, as he sees it, it was improper for the court to deny his *Giglio* claim. *Id.* Respondent claims that Ground Six is procedurally barred and meritless.

*See* Resp. at 17–18, 28–29, 44–46.  The Court skips the procedural issues remaining in this case because the merits are plainly futile.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Loggins v. Thomas*, 654 F.3d 1204, 1215 (11th Cir. 2011) ("When relief is due to be denied even if claims are not procedurally barred, we can skip over the procedural bar issues.").

Petitioner first raised his *Giglio* claim after postconviction counsel filed the Second 3.850 Motion.  *See* Amended Second 3.850 Motion [ECF No. 9-1] at 285–301.  While the Second 3.850 Motion was pending, Petitioner filed a *pro se* motion to amend the Second 3.850 Motion with a *Giglio* claim.  *Id.* at 296–301.  Therein, Petitioner said Mr. Wilson's affidavit proves that (1) Mr. Wilson testified falsely during Petitioner's trial, (2) the lead prosecutor knew Mr. Wilson testified falsely, and (3) Mr. Wilson gave the false testimony implicating Petitioner in the charged offenses because Mr. Wilson believed he would receive a favorable plea agreement by doing so.  *Id.* at 296–97.  The State moved to strike the *pro se* motion since Petitioner was represented by counsel and because the claim was untimely.  State's Motion to Strike [ECF No. 9-1] at 308–10.  The state postconviction court ultimately heard the *Giglio* claim at the evidentiary hearing after postconviction counsel adopted the contents of the *pro se* motion.  *See* Evidentiary Hearing Transcript [ECF No. 10-3] at 5.  Mr. Wilson refused to attend the hearing, causing postconviction counsel to rely on Mr. Wilson's affidavit and several recorded jail calls between Mr. Wilson and Petitioner.  *Id.* at 8–9, 18–28.  The state postconviction court then denied the *Giglio* claim on the merits.  Order Denying Second 3.850 Motion [ECF No. 9-1] at 376–77.

The Court applies the deferential standard of § 2254(d) to Ground Six because the state court effectively adjudicated this claim on the merits.  The state postconviction court clearly did so, as it did not dismiss this claim on procedural grounds.  *Id.*  The Fourth DCA summarily

affirmed the state postconviction court thereafter in an unwritten opinion. *See Lyew*, 284 So. 3d at 1047. The Court must presume that this silent affirmance was an adoption of the state postconviction court's reasoning. *See Wilson*, 138 S. Ct. at 1192.

With that said, and as a reminder, Petitioner says that the state postconviction court "never made the finding of whether State witness Justin Wilson gave false trial testimony" or "whether the prosecutor knew [Mr. Wilson's] testimony was false." Pet. at 31. To the contrary, the postconviction court unambiguously found that "Justin Wilson ha[d] **not** recanted his trial testimony, or otherwise exonerated [Petitioner]" and further found that the state prosecutor had instructed Mr. Wilson to tell the truth at trial. Order Denying Second 3.850 Motion [ECF No. 9-1] at 376–77 (emphasis in original). In other words, the state postconviction court found there was nothing presented during postconviction that was compelling enough to prove Mr. Wilson's trial testimony was false or that the prosecutor had knowledge of potentially false testimony.

Again, "[i]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Landers v. Warden, Atty. Gen. of Ala.*, 776 F.3d 1288, 1296 (11th Cir. 2015) (cleaned up). Even if the postconviction court failed to adhere to state procedural rules, it is not for this Court to resolve—"unless the fact-finding procedure itself violated *federal* law." *Id.* (emphasis added). The Court can only say that the postconviction court's factual findings—that Mr. Wilson's trial testimony was truthful, in light of his absence during the postconviction proceeding, and that the lead prosecutor had no reason to believe Mr. Wilson committed perjury—were reasonable. *Id.*; Evidentiary Hearing Transcript [ECF No. 10-3] at 66–68 (containing the lead prosecutor's testimony that he never offered Mr. Wilson a probation-only sentence in exchange for favorable trial testimony against Petitioner). This is because those findings boil down to credibility determinations. The Court cannot prod at those credibility determinations because "[f]ederal habeas courts have *no license* to redetermine

credibility of witnesses whose demeanor has been observed by the state trial court, [and] not by them." *Nejad v. Att'y Gen., State of Ga.*, 830 F.3d 1280, 1292 (11th Cir. 2016) (cleaned up and emphasis added).

The Court must, in addition, presume those findings were correct. *See* 28 U.S.C. § 2254(e) ("[A] factual issue made by a State court shall be presumed to be correct."). Petitioner has not provided "clear and convincing evidence" to rebut that presumption of correctness. 28 U.S.C. § 2254(e)(1). Since Petitioner has not rebut that presumption, he has failed to plead sufficient facts to establish an unreasonable determination of the facts. *See Nejad*, 830 F.3d at 1294 ("Nejad has not identified clear and convincing evidence that undercuts the prosecutor's testimony, so we must defer to the state court's decision to credit her version of events.").

The Court, moreover, sees nothing in the record suggesting the state postconviction court unreasonably applied *Giglio*. *See Consalvo*, 664 F.3d at 844 (describing § 2254(d)'s standard); *cf. Rodriguez v. Sec'y, Fla. Dep't of Corr.*, 756 F.3d 1277, 1305 (11th Cir. 2014) (affirming that there was no *Giglio* violation when the state postconviction court found the witnesses "had not testified falsely" and, hence, "the prosecutor did not suborn perjury"); *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 949–50 (11th Cir. 2016) (rejecting a *Giglio* claim where the state postconviction court reasonably found that "the state did not knowingly present false evidence"). Because the state postconviction court's adjudication of the *Giglio* claim was reasonable, based on the evidentiary findings stated above, Ground Six is **DENIED**.[9]

---

[9] Worth mentioning, regardless of whatever Mr. Wilson stated in his affidavit or to Petitioner's mother at the Father's Day event in 2015, those statements are not reliable. The State's two plea offers to Mr. Wilson show that Mr. Wilson understood "[t]he sentencing judge [would] have the ultimate discretion as to the precise terms and extent of [his] sentence" and that he might face six years "of incarceration." First Plea Offer [ECF No. 9-1] at 314; Second Plea Offer [ECF No. 9-1] at 318. His after-the-fact statements that he testified falsely to obtain a probation-only sentence, purportedly promised by the State, should be viewed with cynicism. This is because Mr. Wilson never claimed to have misunderstood his plea agreement—an

**EVIDENTIARY HEARING**

No evidentiary hearing is warranted in this matter. *See Shriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the [state court] record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

**CERTIFICATE OF APPEALABILITY**

After careful consideration of the record in this case, the Court declines to issue a certificate of appealability ("COA"). A habeas petitioner has no absolute entitlement to appeal a district court's final order denying his habeas petition. Rather, to pursue an appeal, a petitioner must obtain a COA. *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009).

Issuance of a COA is appropriate only if a litigant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To do so, litigants must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). And "[w]here a district court has disposed of claims . . . on procedural grounds, a COA will be granted only if the court concludes that 'jurists of reason' would find it debatable both 'whether the petition states a valid claim of the denial of a constitutional right' and 'whether the district court was correct in its procedural ruling.'" *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001) (quoting *Franklin v. Hightower*, 215 F.3d 1196, 1199 (11th Cir. 2000)).

Here, reasonable jurists would not find the correctness of the procedural rulings debatable or wrong. Nor would reasonable jurists find the correctness of the Court's rulings on Grounds Five and Six debatable. Accordingly, a COA must be denied on all claims.

---

agreement that unambiguously consented to six years' imprisonment—and Mr. Wilson never made in-court statements, subject to cross examination, that he testified falsely.

<u>**CONCLUSION**</u>

Having carefully reviewed the record and governing law, it is hereby

**ORDERED AND ADJUDGED** that the Petition [ECF No. 1] is **DENIED** and

**DISMISSED** as follows:

- Grounds One through Four are **DISMISSED** for untimeliness;

- Ground Five is **DISMISSED** as non-cognizable and **DENIED** on the merits to the

  extent it can be reconstrued; and

- Ground Six is **DENIED** on the merits.

Any request for a certificate of appealability is **DENIED**, and an evidentiary hearing is

**DENIED**.  All deadlines are **TERMINATED**, and any pending motions are **DENIED** as moot.

Accordingly, this case is **CLOSED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 30th day of January, 2022.

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

cc:   Sean Lyew
      DC # L49612
      Martin Correctional Institution
      Inmate Mail/Parcels
      1150 SW Allapattah Road
      Indiantown, FL 34956
      PRO SE

      Paul Patti, III
      Florida Office of the Attorney General
      1515 N Flagler Drive
      Suite 900
      West Palm Beach, FL 33401-3428
      Email: paul.patti@myfloridalegal.com

      Noticing 2254 SAG Broward and North
      Email: CrimAppWPB@MyFloridaLegal.com